## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JONES MOTOR GROUP, INC., et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2739** |
| **ROSSIE P. HOTARD** | **SECTION: "G"(3)** |

## ORDER

In this litigation, Plaintiffs and Counter-Defendants Jones Motor Group, Inc. and Genesis Motors, LLC (collectively "Plaintiffs") allege that Defendant and Counter-Plaintiff Rossie P. Hotard ("Defendant") negligently rear-ended the trailer of Plaintiffs' tractor-trailer, causing significant damage.[1] Defendant has filed a counterclaim against Plaintiffs, seeking personal injury and property damages.[2] Defendant alleges that the collision was caused by the negligence of the driver of the tractor-trailer, Paul Ganucheau ("Ganucheau"), and his negligence is directly attributable to Plaintiffs.[3] Pending before the Court is Defendant's "Motion for Partial Summary Judgment as to Claims of 'Lost Profits' of Jones Motor Group, Inc."[4] Having reviewed the motion, the memorandum in support, the memorandum in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 18.

[3] *Id.*

[4] Rec. Doc. 33.

## I. Background

*A.*    *Factual Background*

In Plaintiffs' complaint, they allege that, on or about July 14, 2014, Ganucheau was driving a 2014 Volvo tractor-trailer owned by Plaintiffs and traveling in the right lane, eastbound on Highway 90 in Terrebonne Parish, Louisiana.[5] Defendant was driving eastbound on Highway 90, behind Ganucheau, in a 2009 Chevrolet Malibu.[6] Plaintiffs allege that Defendant failed to brake or move into the left lane of traffic and rear-ended the trailer of Plaintiffs' tractor-trailer.[7] Plaintiffs allege that, as a result of the accident, they suffered property damage and loss of use of the tractor-trailer.[8]

In his counterclaim, Defendant alleges that Ganucheau, traveling at an unreasonably slow and unsafe rate of speed, entered the lane of travel occupied by Hotard without warning and Defendant was unable to avoid the merging tractor-trailer due to traffic conditions.[9] Defendant alleges that he suffered personal injuries and property damage as a result of the accident.[10]

*B.*    *Procedural Background*

Plaintiffs, alleging diversity jurisdiction, filed suit in this Court on December 3, 2014.[11] In their complaint, Plaintiffs allege that, as a result of Defendant's negligence, Defendant is liable for

---

[5] Rec. Doc. 1 at p. 2.

[6] *Id.*

[7] *Id.*

[8] Rec. Doc. 1 at p. 4.

[9] Rec. Doc. 18 at p. 2.

[10] *Id.* at p. 3.

[11] Rec. Doc. 1.

repair damages to their tractor-trailer in addition to loss of use damages.[12] On March 16, 2015, Plaintiffs filed an amended complaint to allege the citizenship of the parties in order to address the Court's concerns about its subject matter jurisdiction.[13] On March 25, 2015, Defendant filed a counterclaim, alleging that Plaintiffs are liable for personal injury and property damages as a result of the negligence of Ganucheau, the driver of the tractor-trailer.[14] Defendant filed the instant motion on August 19, 2015.[15] Plaintiffs filed their opposition on September 8, 2015.[16]

## II. Parties' Arguments

### A.     Defendant's Arguments in Support of His Motion for Partial Summary Judgment

Defendant moves for summary judgment on Plaintiffs' claim for recovery of "lost profits."[17] Defendant contends that Plaintiffs have produced a declaration of the Vice President of Jones Motor Group stating that the trailer at issue in this case could be reasonably expected to generate a profit of $1,000 a day during the time the trailer was not useable.[18] Citing *Alexander v. Qwik Change Car Center*,[19] Defendant asserts that, under Louisiana law, a loss of use claim is valued at the amount required to rent a substitute vehicle, and that there is no case law to support a corporation's recovery

---

[12] *Id.*

[13] Rec. Doc. 17.

[14] Rec. Doc. 18.

[15] Rec. Doc. 33.

[16] Red. Doc. 37.

[17] Rec. Doc. 33. at p. 1.

[18] *Id.*

[19] 352 So. 2d 188 (La. 1977).

of "lost profits."[20] Defendant contends that, in *Alexander*, the Louisiana Supreme Court also stated that a loss of use award need not be restricted to rental costs and much discretion is given to the trial court in making such an award.[21] Defendant asserts that, although courts may exercise their discretion to extend a loss of use award beyond the cost of renting a substitute vehicle, "such extension must be reasonable under the circumstances and there is no requirement that any court do so."[22] According to Defendant, although courts have awarded incidental damages in cases where there is an undue delay in the time to repair a vehicle, courts have not awarded lost profits with respect to loss of use claims similar to this case.[23] Defendant asserts that Plaintiffs cannot identify any extenuating circumstances that would warrant an award beyond rental costs.[24] In support, Defendant contends that liability is in dispute, Plaintiff Jones Motor Group is a well-capitalized corporation capable of paying for its own repairs, and Plaintiffs failed to rent a substitute vehicle.[25]

Defendant also maintains that the evidence in this case indicates that Plaintiffs failed to mitigate their losses by choosing not to rent a substitute vehicle.[26] In support, Defendant attaches a declaration from Daryn Spence, an employee at The Hanover Insurance Group.[27] In the declaration, Spence attests that he spoke with Danny Love, the general manager at Kenworth of

---

[20] Rec. Doc. 33 at p. 1.

[21] Rec. Doc. 33-1 at p. 3.

[22] *Id.*

[23] *Id.*

[24] *Id.* at p. 4.

[25] *Id.*

[26] Rec. Doc. 33 at p. 1.

[27] Rec. Doc. 33-6.

South Louisiana who was responsible for the repairs on Plaintiffs' trailer, and learned from Love that Kenworth could have supplied a rental trailer that would be a suitable substitute for Plaintiffs' damaged trailer.[28]

**B.      *Plaintiffs' Arguments in Opposition***

In opposition, Plaintiffs contend that: (1) statements made in the Declaration of Daryn Spence[29] are predicated upon inadmissible hearsay and therefore should not be considered on a motion for summary judgment; (2) Plaintiffs can recover loss of use/lost profit damages; and (3) the damaged trailer had been specially modified and therefore Plaintiffs could not easily rent a replacement.[30]

First, Plaintiffs contend that, in the Declaration of Daryn Spence, Spence recounts what he was told by another individual, Danny Love, and therefore the declaration contains inadmissible hearsay that may not be considered on a motion for summary judgment.[31] Furthermore, Plaintiffs contend that, even if the statement is admissible, the declaration creates issues of fact as to whether a substitute trailer was available and at what cost.[32]

Second, Plaintiffs contend that an award of damages for loss of use of a vehicle is not limited to rental costs and trial courts retain discretion over such awards.[33] Plaintiffs contend that Louisiana

---

[28] *Id.*

[29] Rec. Doc. 33-6.

[30] Rec. Doc. 37 at p. 1.

[31] *Id.* at p. 4 (citing *Brown v. Home Depot U.S.A., Inc.*, No. 14-1470, 2015 WL 2040112, at *23–24 (E.D. La. Apr. 30, 2015) (Brown, J.)).

[32] *Id.* at p. 5.

[33] *Id.* at p. 6 (citing *Alexander*, 352 So. 2d at 190).

courts recognize a right to recover for loss of a vehicle even when a vehicle is totaled and even when a plaintiff does not rent a replacement.[34] Plaintiffs aver that the accident denied Plaintiffs the ability to transport loads normally transported by this trailer, thereby denying them profits.[35] In support of their argument that they may recover lost profits, Plaintiffs also cite to *AT&T Corp. v. Columbia Gulf Transmission Co.*,[36] a Western District of Louisiana case that discusses the Louisiana Supreme Court decision, *Borden, Inc. v. Howard Trucking Co., Inc.*[37] Plaintiffs assert that in *Borden, Inc.*, the court denied a claim for lost profits suffered by plaintiff after a compressor at a methanol plant was damaged because there was no evidence of any lost sales.[38] Plaintiffs contend that, finding that the plant ran continuously, the court calculated an award for the amount of methanol that would have been produced during the period the compressor was damaged.[39]

Third, Plaintiffs contend that it was not feasible to obtain a replacement trailer on a short-term basis.[40] Plaintiffs assert that the trailer was a "specialized unit, specifically modified for the transportation of materials used in the oil field and dedicated for the use of this particular

---

[34] *Id.* (citing *Neloms v. Empire Fire & Marine Ins.*, 37,786-CA (La. 10/16/03), 859 So. 2d 225).

[35] *Id.* at p. 8.

[36] No. 07-1544, 2008 WL 458439 (W.D. La. Sept. 15, 2008).

[37] 454 So.2d 1081 (La. 1983).

[38] Rec. Doc. 37 at p. 8.

[39] *Id.* at pp. 8–9.

[40] *Id.*

customer."[41] In addition, according to Plaintiffs, the failure to mitigate damages is an affirmative defense and Defendant has failed to meet his burden.[42]

### III. Law and Analysis

#### A.      *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[43] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[44] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[45] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[46] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[47]

---

[41] *Id.* at p. 7.

[42] *Id.* at p. 9.

[43] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[44] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[45] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[46] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[47] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[48] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[49] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[50] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[51] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[52]

## B.   *Applying Louisiana Law*

When a federal court interprets a state law, it must do so according to the principles of interpretation followed by that state's highest court.[53] In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[54] These

---

[48] *Celotex*, 477 U.S. at 323.

[49] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[50] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[51] *Little*, 37 F.3d at 1075.

[52] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(C)(2).

[53] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[54] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004).

authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."[55] To make a so-called "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.[56]

*C.    Analysis*

Defendant asserts that "[n]o case stands for the proposition that a corporation such as [Jones Motor Group] can recover 'lost profits' as claimed, especially where the evidence indicates that the company chose not to rent a substitute vehicle and failed to mitigate any such losses."[57] Defendant's argument appears to be two-fold. First, Defendant implies that Plaintiffs categorically cannot recover loss of use damages resulting from lost profits. Second, it appears that Defendant contends that, in this case, where "the evidence indicates that [Plaintiffs] chose not to rent a substitute vehicle and failed to mitigate [their] losses," Plaintiffs are unable to recover for lost profits.[58] The Court will address these arguments in turn.

**1.    Lost Profits**

Pursuant to Louisiana Civil Code Article 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2324.1 states that

---

[55] *Id.* (quoting LA. CIV. CODE. art. 1).

[56] *Id.* (citation omitted).

[57] Rec. Doc. 33 at p. 1.

[58] *Id.*

9

"[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."[59]

In support of its motion for summary judgment, Defendant cites the Louisiana Supreme Court case *Alexander v. Qwik Change Car Center*.[60] In *Alexander*, the plaintiff had delivered his car to the defendant for repairs.[61] While the car was at the defendant's garage, the defendant began to use the car in its business.[62] After the plaintiff filed a lawsuit against the defendant, the car disappeared from defendant's possession.[63] The trial court awarded the plaintiff $1,150 for the value of the car and $1,000 for loss of use.[64] The Louisiana Supreme Court held that although the plaintiff had not rented a substitute vehicle, the award for loss of use was proper under Article 2315 of the Louisiana Civil Code, which provides for damages in tort cases.[65] The court stated that although "[n]ormally, this Court has measured the damages for loss of use by the rental costs of a substitute vehicle . . . [t]he award, [], need not be restricted to rental."[66] The court held that "[m]uch discretion is vested in the trial court" and considering the inconvenience and mental anguish from the plaintiff's loss of the use of his car, the trial judge had not abused his discretion in awarding the $1,000.[67]

---

[59] La. Civil Code art. 2324.1.

[60] Rec. Doc. 33-1 at p. 3.

[61] 352 So. 2d 188, 189 (La. 1977).

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 190 (citations omitted).

[67] *Id.*

Defendant does not contest that Plaintiffs are not limited to the costs of renting a substitute vehicle in loss of use awards. Rather, Defendant asserts that Louisiana courts generally do not award loss of use beyond rental costs "unless the facts dictated that incidental expenses, such as storage fees and inconvenience should be included."[68] Defendant asserts that "[c]ourts **have not** awarded 'lost profits' with respect to a [sic] loss of use claims similar to that advanced by [Jones Motor Group]."[69] In opposition, Plaintiffs assert that Louisiana courts have recognized a right to recover loss of use damages even when a vehicle is totaled.[70]

Since the Louisiana Supreme Court's decision in *Alexander*, the Louisiana Third Circuit Court of Appeal has awarded damages for loss of profits in a case very similar to this case. In *Meshell v. Insurance Company of North America*,[71] the plaintiff brought suit for negligence arising out of a collision between his dump truck and another vehicle.[72] The plaintiff claimed that his truck was his sole means of livelihood, the loss of his truck's use resulted in a loss of earnings from hauling sand and gravel, and he had been unable to find a suitable replacement for two months after the accident.[73] The Third Circuit Court of Appeal found that the trial court had not erred in awarding the plaintiff loss of profits for sixty days and found that there was sufficient evidence in the record to support the trial court's conclusion that the plaintiff often worked six days a week hauling gravel and therefore was entitled to an award on that basis.[74]

---

[68] *Id.*

[69] Rec. Doc. 33-1 at p. 3 (emphasis in original).

[70] Rec. Doc. 37 at p. 6 (citing *Neloms*, No. 37,786-CA (La. App. 2 Cir. 10/16/03), 859 So.2d 225).

[71] 416 So. 2d 1383 (La. App. 3 Cir. 1982).

[72] *Id.* at 1388.

[73] *Id.* at 1387.

[74] *Id.* at 1388.

11

An award of loss of profits resulting from loss of use of a vehicle also appears to have been recoverable prior to *Alexander*. In *Gore v. Miller*,[75] an owner of a truck used to haul logs sought loss of use damages equal to two months of lost profits after the truck was damaged in a collision.[76] After reviewing the evidence presented regarding the computation of lost profits, the Louisiana Third Circuit Court of Appeal upheld the award.[77] In *Tornabene v. Rau*,[78] a taxicab driver sued for damages resulting from a collision caused by the negligence of another driver.[79] The Fourth Circuit Court of Appeal upheld the award for repair costs, lost earnings while the cab was being repaired, as well as lost rental profits because at night the plaintiff rented his vehicle to another driver.[80]

In their opposition to the motion for summary judgment, Plaintiffs cite *Nolan v. Liuzza*[81] for the proposition that an award for loss of use is not restricted to rental costs.[82] In that case, the court noted that although the measure of recovery "has often been the cost of substitute transportation, such as car rental," in cases where the plaintiff has not rented a car for the entire period that he has not been able to use the vehicle, an award of rental costs may not fully compensate the plaintiff for loss of use of the vehicle.[83] Therefore, the court concluded that it had discretion to take into account other factors in an award for loss of use, including the fact that an owner may be making car

---

[75] 311 So. 2d 894 (La. App. 3 Cir. 1975).

[76] *Id.* at 898.

[77] *Id.*

[78] 34 So. 2d 655 (La. App. Orleans 1948)

[79] *Id.* at 655–56.

[80] *Id.* at 657.

[81] 301 So. 2d 892 (La. App. 4 Cir. 1974).

[82] Rec. Doc. 37 at p. 6.

[83] *Nolan*, 301 So. 2d at 894.

insurance payments during the time they were not able to use their vehicle.[84] In addition, Plaintiffs cite to *Neloms v. Empire & Marine Insurance Co.*,[85] where the court affirmed the trial court's award of loss of use damages, despite the fact that plaintiff had not rented a substitute vehicle because she was too nervous to drive.[86] The court held that "[t]he fact remain[ed] that [the plaintiff] was **inconvenienced** and ***deprived of the use of her car*** and had to be transported thereafter in her husband's car."[87] These cases further demonstrate the discretion of the trial court in determining a proper award for loss of use.

Plaintiffs also cite *AT&T Corp. v. Columbia Gulf Transmission Co.*, a Western District of Louisiana case.[88] There, the Court held that the plaintiff could not recover for loss of use damages arising out of damage to its underground telecommunications cable because it did not suffer "an actual identifiable, consequential, and measurable loss."[89] However, the court found that it "may well be able to adduce evidence to support some form of loss of use or cost of mitigation."[90] The court, citing *Alexander*, also found that although the plaintiff was free to argue to the trier of fact that its loss of use damages should be the cost of renting capacity from another telecommunications carrier, rental costs are not the only way to calculate such damages.[91]

---

[84] *Id.*

[85] 37,786-CA (La. 10/16/03), 859 So. 2d 225.

[86] *Id.* at 233.

[87] *Id.* (bold and italics in original).

[88] Rec. Doc. 37 at p. 8.

[89] *AT&T Corp.*, No. 07-1544, 2008 WL 4585439, at *4 (W.D. La. Sept. 15, 2008).

[90] *Id.*

[91] *Id.* at *5.

In its reasoning, the court in *AT&T Corp.* relied upon the Louisiana Supreme Court decision in *Borden, Inc. v. Howard Trucking Co.*[92] In *Borden, Inc.*, a truck driver, who was transporting a compressor for the plaintiff's methanol plant, negligently caused an accident and the compressor was damaged.[93] The court upheld the lower court's findings that the action lay in tort and the plaintiff was entitled to recover all foreseeable damages flowing from the accident.[94] The court noted that "[d]amages in the nature of lost profits resulting from an offense or quasi-offense must be proved with reasonable certainty."[95] The court found that, although the plaintiff had been damaged by the delay in its ability to restart its methanol plant due to the damage to the compressor, plaintiff had not met its burden to prove damages for lost profits to a reasonable certainty.[96] Although these cases support the proposition that corporations generally may recover lost profits in tort cases, they don't address Defendant's argument that loss of use in the case of a vehicle is limited to rental costs.

Defendant has not directed the Court to any cases where a court has held that lost profits are not recoverable by corporations. Therefore, in light of the cases discussed above, and the Louisiana Supreme Court's holding that "[m]uch discretion is vested in the trial court" in awarding loss of use damages, the Court finds that movant has not shown that no material facts are in dispute and that lost profits are an excluded category of damages as a matter of law.

---

[92] *Id.* at *4.

[93] 454 So.2d 1081, 1082–83 (La. 1983)

[94] *Id.* at 1083.

[95] *Id.* at 1092.

[96] *Id.* at 1092–93.

## 2.      Failure to Mitigate

Defendant also asserts that it is entitled to summary judgment on Plaintiffs' claim for lost profits because Plaintiffs "chose not to rent a substitute vehicle and failed to mitigate any such losses."[97] Citing the Louisiana First Circuit Court of Appeal in *Lemoine v. Mike Munna*, *L.L.C.*,[98] Plaintiffs contend that the failure to mitigate damages is an affirmative defense and therefore the burden of proof is on Defendant.[99] According to Plaintiffs, Defendant has failed to meet his burden, and "the record facts clearly substantiate Plaintiffs' inability to simply rent a substitute trailer."[100]

Under Louisiana law, "an injured plaintiff has a duty to take reasonable steps to mitigate damages."[101] Although many of the Louisiana Courts of Appeal have held that the defendant has the burden to prove a failure to mitigate damages,[102] the Louisiana Supreme Court has not yet ruled on the issue.

In support of its motion for summary judgment, Defendant attaches a declaration from Daryn Spence, an employee at The Hanover Insurance Group.[103] In the declaration, Spence attests that he spoke with Danny Love, the general manager at Kenworth of South Louisiana who was responsible for the repairs on Plaintiffs' trailer, and learned that Kenworth could have supplied a

---

[97] Rec. Doc. 33 at p. 1.

[98] No. 2013-2187 (La. App. 1 Cir. 6/6/14), 148 So.3d 205.

[99] Rec. Doc. 37 at p. 9.

[100] *Id.*

[101] *Aisole v. Dean*, 574 So. 2d 1248 (La. 1991) (citations omitted).

[102] *See Lemoine v. Mike Munna, L.L.C.*, No. 2013-2187 (La. App. 1 Cir. 6/6/14), 148 So. 3d 205; *Sanchez v. Dubuc*, No. 12-526 (La. App. 5 Cir. 2/21/13), 110 So. 2d 1140, 1145; *Leaman v. Cont'l Cas.* Co., No. 2000-0292 (La. App. 4 Cir. 9/26/01), 798 So. 2d 285, 293; *Hunt v. Long*, No. 33,395-CA (La. App. 2 Cir. 6/21/00), 763 So. 2d 811, 816.

[103] Rec. Doc. 33-6.

15

rental trailer that would work as a suitable substitute for Plaintiffs' damaged trailer.[104] Plaintiffs contend that because Spence recounts what he was told by another individual, the statement is inadmissible hearsay that may not be considered on a motion for summary judgment.[105] In support, Plaintiffs cite this Court's decision in *Brown v. Home Depot U.S.A., Inc.*[106] In *Brown*, this Court held that the plaintiff had not met his burden of demonstrating that the proffered affidavits were admissible pursuant to Federal Rule of Evidence 801(d)(2)(D), which provides that statements made by a party's agent or employee on a matter within the scope of the relationship while such a relationship existed are not hearsay.[107] Defendant has not responded to Plaintiff's argument that the statement is inadmissible hearsay.

Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[108] According to the commentary for the 2010 Amendments to Rule 56(c), the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.

Plaintiff submits declarations from both Daryn Spence and Danny Love.[109] In Daryn Spence's affidavit, he attests that "[b]ased upon my conversations with Danny Love at Kenworth of South Louisiana, the general manager responsible for the repairs on this trailer, it is apparent that

---

[104] *Id.*

[105] Rec. Doc. 37 at p. 4.

[106] 2015 WL 2040112 (E.D. La. Apr. 30, 2015) (Brown, J.).

[107] 2015 WL 2040112 at *8–10.

[108] FED. R. CIV. P. 56(c)(4).

[109] Rec. Docs. 33-5; 33-6.

[Kenworth's] rental trailers would work as a suitable substitute for the damaged trailer [Kenworth] repaired."[110] This statement is therefore not based upon the personal knowledge of Spence. In Love's declaration, Love discusses how much time was spent repairing Plaintiffs' trailer and the costs, but does not discuss the availability of a suitable rental trailer.[111] Defendant has not responded to the argument that this statement is inadmissible. Accordingly, Defendant has not met his burden "to show that the material is admissible as presented or to explain the admissible form that is anticipated."[112] Therefore, the Court will not consider the portion of Spence's declaration related to his conversation with Love in the motion for summary judgment.

In Spence's declaration, Spence also attests that, in his opinion, having reviewed the documents showing the size and type of the trailer involved and based on his experience, a rental for a trailer of similar type and use would cost approximately $45 per day.[113] Plaintiffs do not make any objection regarding this statement's admissibility. Plaintiffs have, however, submitted an affidavit of Patrick Graben, Division Vice President of Plaintiff Jones Motor Group, in which Graben attests that renting a trailer was not feasible.[114] Graben attests that the damaged trailer was a "specialized unit, specifically modified for the transportation of materials used in the oil field and dedicated for the use for this particular customer."[115] Accordingly, considering the dispute in the record regarding whether Plaintiffs could have mitigated their damages by renting a trailer for $45 per day, the Court finds that there is a genuine issue of material fact regarding Plaintiffs' mitigation

---

[110] Rec. Doc. 33-6 at p. 2.

[111] Rec. Doc. 33-5.

[112] FED. R. CIV. P. 56(c)(4) advisory committee's notes to 2010 amendment.

[113] Rec. Doc. 33-6.

[114] Rec. Doc. 37-2.

[115] *Id.*

of their damages. Therefore, the Court denies Defendant's motion for summary judgment on this issue as well.

**IV. Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Partial Summary Judgment as to Claims of 'Lost Profits' of Jones Motor Group, Inc."[116] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 28th day of September, 2015.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[116] Rec. Doc. 33.